1997 ME 143

## In re JOSEPH C.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 14, 1997.
Decided June 30, 1997.

Thomas F. Shehan, Jr., Orono, for appellant.

Andrew Ketterer, Attorney General, Diane E. Doyen, Janice S. Stuver, Geoffrey Goodwin, Asst. Attys. Gen., Augusta, for appellee.

Jacqulyn Dodge, CASA guardian ad litem

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] The mother of Joseph C. appeals from the entry of the judgment in the District Court (Bangor, *Hjelm, J.*) terminating her parental rights as to her son, Joseph. She contends that the court erred by refus-

ing to leave the record open to allow her court-appointed expert a reasonable time to complete his psychological examination. We agree, and we vacate the judgment.

## I.

[¶ 2] Joseph C., age 9, has been in the custody of the Department of Human Services (DHS) since 1993. On February 27, 1996, DHS filed a petition for termination of the mother's parental rights.[1] At a pre-trial conference on April 3, the court scheduled the DHS petition for a hearing on June 10 and June 12. On April 17, the mother filed a motion for an independent psychological examination of Joseph by psychologist Thomas Gaffney at state expense. In that motion she stated that Joseph had had "psychological diagnoses and treatment by providers selected by the adversary party, Maine Department of Human Services." She disputed "the validity of the diagnoses of Joseph [C] as Fetal Alcohol Effects (FAE) on the basis that she was not allowed to provide a parental and early childhood history, which Dr. Gaffney opines is necessary," and she asserted that the evaluation could not be done "without cooperation from the department, for presentation of [Joseph C.] and for transportation of all participants." She added that "this family and individual psychological evaluation is reasonable and necessary for a mother to fairly and effectively present her position."

[¶ 3] On May 1 the court orally granted the motion, with the restriction that Dr. Gaffney would not be permitted to interview any of the mother's children unless the therapists for the children determined that an independent evaluation was in the best interest of the children.[2] On May 10 the court issued its written order approving $1400 for Dr. Gaffney's examination and removing the re-

striction on Dr. Gaffney's access to her children. In its order, the court noted the importance of *In re Michael V.*, 513 A.2d 287 (Me.1986) to its decision to remove the limitation:

> The Law Court there suggested that the statutory right of a parent to obtain an evaluation of the child is rooted in the parent's "fundamental liberty interest" arising from the parent-child relationship.... This basis appears to be of constitutional dimension....

The termination hearing was conducted as scheduled on June 10 and 12. On the second day of the hearing, the court refused to keep the record open to allow Dr. Gaffney to submit his psychological evaluation of Joseph and his family at the end of July. The court entered a judgment terminating the mother's parental rights to Joseph. She now appeals.

## II.

[¶ 4] The court correctly noted the importance of *In re Michael V.* to an analysis of this case. We concluded there that the court had erred by denying the motion for a psychiatric examination of Michael by the mother's own expert witness:

> The Department had filed a petition for termination of parental rights, which Clarion L. opposed, and the Department took an adversarial stance against her. The Department had allowed its expert to examine Michael, and Clarion had reason to believe that the psychological profile of Michael would be used against her in the termination proceeding. These facts alone demonstrate by the clear and convincing standard the necessity for a psychological examination of Michael by Clarion's own expert witness. This need stems from her fundamental liberty interest in the care

---

1. DHS also petitioned for termination of the parental rights of the father of Joseph C. The father consented to the petition and his parental rights were terminated in April of 1996.

2. The psychological evaluation authorized by the court involved more than the evaluation of Joseph C. Four other children of the mother were in the protective custody of the State. Two of those children, Nicholas H. and Andrew H., were also the subject of the motion for a mental exam-

ination. Although the cases of these two children had not moved to a termination stage, the court had to review the continuation of their protective custody status. The evaluation to be conducted by Dr. Gaffney was to assist the court with that issue as well as the termination decision on Joseph C. Dr. Gaffney's mandate was to evaluate the three children individually as well as the family relationship between the mother and her children.

and custody of her son and her right to a fundamentally fair procedure in defending that interest. See *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

513 A.2d at 288.

In response to this decision, the Legislature amended section 4007(3) in 1989[3] to eliminate the evidentiary burden on the parent set forth in the statute to establish the need for an independent evaluation. 22 M.R.S.A. § 4007(3) now provides:

> **Motion for examination.** At any time during the proceeding, the court may order that a child, parent, alleged parent, person frequenting the household or having custody at the time of the alleged abuse or neglect, any other party to the action or person seeking care or custody of the child be examined pursuant to the Maine Rules of Civil Procedure, Rule 35.

The Statement of Fact to L.D. 415, the bill that prescribed the changes to section 4007(3), states that the Legislature was cognizant that

> because of the recent Law Court decision in *In re Michael V.*, there have been some questions about motions for examinations. This revision makes it clear that the court has the discretion to deal with such requests and connects this section to established rules regarding discovery.

L.D. 415, Statement of Fact (114th Legis.1989).

[¶ 5] The court initially recognized that *Michael V.* required it to grant the mother's request for an independent psychological examination of Joseph by her own expert. Although it so ruled on May 1, 1996, it included the condition already noted precluding Dr. Gaffney from interviewing Joseph without a determination by his therapist that such an evaluation was in his best interest. That condition was removed in the written order of May 10. Dr. Gaffney sent a request for releases to DHS on May 29. DHS gave the releases to the mother's counsel on the first day of the termination hearing on June 10. Obviously, Dr. Gaffney's report was not available for the hearing.

[¶ 6] Recognizing this fact, the State's attorney advised the court at the outset of the hearing as follows: "I can assume that the hearing which is scheduled to be completed this Wednesday will not happen." The court did not share that assumption:

> I wouldn't make that assumption. I mean, there's been no request for a continuance at this point, and the matter's been scheduled for some time. If somebody moves for a continuance, then we'll deal with it then.

Instead of asking for a continuance, the mother asked the court to keep the record open until Dr. Gaffney could complete his examination by the end of July. The State and the guardian ad litem objected. The court denied the mother's request, stating that although the court was "reluctant" to proceed, the "urgency" of Joseph's need for resolution to the pending petition made it "inappropriate to allow the case to be ... delayed any more than it already has." In its analysis of the events prior to the termination hearing, the court saw too much delay by the mother's counsel and Dr. Gaffney:

> The petition for termination was filed in February of this year, four or five months ago, and the matter was pre-tried in April, I think, April 3rd. And at that point, Dr. Gaffney was listed as a potential expert for the mother. The motion for funds was not filed until about two weeks after that, April 16th. A motion hearing was held on May 1st, and that's when I indicated on May 1st that I would approve the amount that [the mother's counsel] asked for. I did at that point impose some restrictions on whether—on the people to whom Dr. Gaffney might have access. But then by a written order dated May 10th, I basically vacated those limitations or those restrictions. So

---

**3.** At that time, 22 M.R.S.A. § 4007(3) provided as follows:

> **Motion for Examination.** At any time during the proceeding, after a clear and convincing showing of the necessity for information that cannot be obtained by other means, a court may order that a child, parent, person frequenting the household or having custody at the time of the alleged abuse or neglect be examined by a physician, psychologist or psychiatrist.

at least as of May 1st, [the mother's counsel], at least, was aware of the fact that I was approving money for Dr. Gaffney's work. And apparently, he didn't send out requests for information to the Department until the end of the month.

[¶ 7] Although we recognize the difficult situation facing the court, and the importance of its concern for a permanent home for Joseph, we conclude that the court exceeded the bounds of its discretion in refusing to allow more time for the preparation of Dr. Gaffney's report and its submission to the court. There was no unreasonable delay in filing the motion for the appointment of Dr. Gaffney. The order authorizing Dr. Gaffney's work was not finalized until May 10. Even if Dr. Gaffney had sought releases from DHS earlier than May 29, the court could not reasonably expect that Dr. Gaffney's evaluation, authorized to encompass interviews with the mother and three of her children, would be completed only 30 days after the court authorized funds for and removed an obstacle to his evaluation of Joseph. The court was advised by the mother that Dr. Gaffney's report would be available at the end of July, a little more than six weeks from the second hearing date of June 12. The request to keep the record open for this period of time was modest and reasonable. There was no request for an indefinite delay. The taking of additional evidence might have been limited to Dr. Gaffney's report.

[¶ 8] At the termination hearing, the State relied in part on the testimony of a licensed clinical social worker, who had been providing therapy to Joseph C. since January 1995. She described the play therapy, the behavioral interventions and the medications used to deal with Joseph's problems, which included aggression, self-abusive behaviors, anxiety symptoms, nightmares and "just having difficulty coping with the stresses in his life." She was asked: "In your professional opinion what—in regards to permanency, what does this child need?" She responded: "He needs to know where he's going to be forever, and not have to be moved again. He needs to know that now."

[¶ 9] Joseph's mother does not dispute this need for permanency and its importance to the best interest of her son. She argues, simply, that she was entitled to have her own expert witness evaluate the psychological condition of her son and her ability to meet his need for permanence, and present this evaluation to the court before it made a decision on the termination of her parental rights. She is correct. Given the facts in this case and our holding in *Michael V.*, the court's decision to terminate the parental rights of the mother to her son Joseph, without allowing a reasonable time for the submission of the authorized psychological evaluation, deprived the mother of the fair hearing to which she was constitutionally entitled.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with the opinion herein.